DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**C.R.,** a child,
Appellant,

v.

**MICHAEL J. BURKE,** Superintendent of Schools, and
**SCHOOL BOARD OF PALM BEACH COUNTY,**
Appellees.

No. 4D2025-0432

[July 1, 2026]

Appeal from the State of Florida, Division of Administrative Hearings and the School Board of Palm Beach County; L.T. Case No. 24/25-X-001.

Kai Li Aloe Fouts of Eisenberg & Fouts, P.A. and Shahar Pasch of Pasch Law Group, West Palm Beach, for appellant.

Christine B. Gardner and Shawntoyia Bernard of the School Board of Palm Beach County, West Palm Beach, for appellees.

KLINGENSMITH, J.

This appeal requires us to determine whether the Appellee School Board of Palm Beach County properly expelled Appellant C.R. under its zero-tolerance policy—School Board Policy 5.1814—after an administrative hearing officer concluded that the School Board failed to establish that C.R. had intended to communicate a true threat under section 836.10, Florida Statutes (2024). This case turns on a narrow question: did the alleged conduct fall within the parameters which the School Board chose to define as a zero-tolerance offense in the applicable version of policy 5.1814.

We hold that policy 5.1814 expressly incorporated section 836.10, where controlling judicial authority had already construed that statute to require proof of a culpable mental state. Because the School Board failed to prove the charged zero-tolerance offense, we reverse the final order of expulsion.

## I. Facts

The material facts are largely undisputed.  C.R. was an eighth-grade student enrolled in a Palm Beach County public school.  C.R. has ADHD and was later also diagnosed with autism spectrum disorder.  C.R. also had a limited disciplinary history.  During a classroom activity, C.R. typed a statement on a school computer indicating that his goal was to kill all black people.  He showed the statement to several classmates and then immediately deleted it.

The statement came to the attention of school officials through electronic monitoring software.  School administrators promptly initiated an investigation.  Law enforcement became involved, and school officials conducted a threat assessment.

At the time of the incident, policy 5.1814 stated in relevant part:[1]

> The Board shall promote a safe and supportive learning environment in all schools by protecting its students and employees from behavior that poses a threat to school safety. The Board shall expel any student who commits a violation of the zero-tolerance policy for a period of time of not less than one year from the date of the incident . . . .
>
>   2.   Definitions --
>
>   . . . .
>
>   b.   Zero Tolerance Offenses: The following offenses pose a threat to school safety:
>
>   . . . .
>
>   v.   Posting or transmitting a threat of mass shooting/violence or terrorism as defined by Fla. Stat. § [836.10], school, school transportation, or a school sponsored activity.

Section 836.10 pertinently provides:

---

[1] At the time of the incident, policy 5.1814(2)(b)(v) referenced "section 863.10(1)." However, as both parties' briefs recognize, "section 863.10(1)" did not exist.  Both parties agree that policy 5.1814(2)(b)(v) intended to refer to section 836.10.

(1)  As used in this section, the term "electronic record" means any record created, modified, archived, received, or distributed electronically which contains any combination of text, graphics, video, audio, or pictorial represented in digital form, but does not include a telephone call.

(2)  It is unlawful for any person to send, post, or transmit, or procure the sending, posting, or transmission of, a writing or other record, including an electronic record, in any manner in which it may be viewed by another person, when in such writing or record the person makes a threat to:

(a)  Kill or to do bodily harm to another person; or

(b)  Conduct a mass shooting or an act of terrorism.

§ 836.10(1)-(2), Fla. Stat. (2024).

At the administrative hearing, the evidence established that C.R. consistently maintained he had intended the statement as a joke. Witness testimony reflected that the students who had viewed the statement generally understood it as an attempt at humor, and although some reported feeling uncomfortable in their witness statements, none of them said they felt threatened by what C.R. had written. Also, no student reported the statement to a teacher; school officials independently discovered it. The threat assessment protocol used by the school ultimately classified the incident as a "low-level" threat, meaning a threat that is not able to be carried out.

The School District superintendent sought C.R.'s expulsion under policy 5.1814. Because disputed issues existed, the matter proceeded through a formal administrative hearing governed by sections 120.569 and 120.57, Florida Statutes (2024).

Following the hearing, the hearing officer entered a detailed recommended order concluding that policy 5.1814 expressly incorporated section 836.10, and that our decision in *T.R.W. v. State*, 363 So. 3d 1081 (Fla. 4th DCA 2023), supplied the controlling interpretation of section 836.10. Applying *T.R.W.*, the hearing officer determined that the School Board failed to prove that C.R. had intended to transmit a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat. The hearing officer therefore recommended against expulsion.

3

The superintendent rejected that recommendation. As a result, the School Board accepted the hearing officer's underlying factual findings, but rejected the legal conclusion that proof of such intent was required. The School Board subsequently entered a final order expelling C.R. Although the School Board reduced the expulsion's duration, the expulsion remained a formal disciplinary sanction.

This appeal followed. C.R. argues that the School Board erroneously interpreted policy 5.1814 by concluding that a student may commit the incorporated section 836.10 offense without proof of intent to communicate a true threat. C.R. further argues that the School Board improperly rejected the hearing officer's recommended order and failed to comply with section 120.57(1)(*l*)'s requirements.

The School Board responds, among other things, that C.R.'s statement was a threat—even if it was characterized as a low-level threat—because it communicated an intent to engage in violence, kill, or do bodily harm to an entire racial group. Additionally, the School Board asserts that the reference to section 836.10 in policy 5.1814 is a limited reference, and thus the School Board retains control over how section 836.10 is applied within its policies and did not adopt all law interpreting section 836.10.

## II. Standard of review

Judicial review of final agency action is governed by section 120.68(8), Florida Statutes (2024), which states in part: "Unless the court finds a ground for setting aside, modifying, remanding, or ordering agency action or ancillary relief under a specified provision of this section, it shall affirm the agency's action." Under section 120.68(7)(d), Florida Statutes (2024), an appellate court must set aside agency action when the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular result.

Questions involving statutory interpretation, policy interpretation, and the legal consequences flowing from undisputed facts are reviewed de novo. *See N.H. v. Agency for Pers. with Disabilities*, 430 So. 3d 1020, 1022 (Fla. 3d DCA 2026); *Puri v. Dep't of Child. & Fams.*, 371 So. 3d 428, 431 (Fla. 1st DCA 2023). However, "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact[.]" § 120.68(7)(b), Fla. Stat. (2024).

## III. Analysis

### a. Policy 5.1814's Text Controls

4

The starting point for our review is the policy language which the School Board adopted. Policy 5.1814 identified as a zero-tolerance offense "[p]osting or transmitting a threat of mass shooting/violence or terrorism as defined by Fla. Stat. § [836.10]." Section 836.10 does not define the word "threat." Policy 5.1814 did not independently define the offense. Nor did policy 5.1814 create a separate standard detached from section 836.10. Instead, policy 5.1814 expressly defined the offense by reference to section 836.10.

While the School Board argues policy 5.1814's reference to section 836.10 incorporated only selected concepts from section 836.10, while leaving the School Board free to determine for itself what constitutes a "threat," policy 5.1814's text does not support that interpretation. When a governmental entity chooses to define prohibited conduct by reference to a statute, the incorporated language carries the settled legal meaning attached to the statute. *See, e.g.*, *Morris v. Muniz*, 252 So. 3d 1143, 1154 (Fla. 2018) (quoting *Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912, 917 (Fla. 2001)) (citation modified) ("[T]he Legislature is presumed to know the judicial constructions of a law when enacting a new version of that law and the legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in the new version."). Judicial constructions are not external glosses added after the fact; such constructions become part of the meaning of the law itself. Accordingly, absent language demonstrating a contrary intent, incorporation of a statute includes the authoritative judicial construction of that statute.

The School Board certainly had other options. The School Board could have drafted a broader policy or defined threatening conduct without reference to section 836.10. The School Board also could have expressly stated that any statement referencing violence constitutes a zero-tolerance offense regardless of intent. The School Board did not do so. Instead, the School Board chose to define the offense by reference to section 836.10. We must apply and enforce that choice.

### b. *T.R.W.* Supplies the Governing Interpretation

The hearing officer relied heavily on our *T.R.W.* decision. That reliance was correct. In *T.R.W.*, we concluded section 836.10 does not impose strict liability. 363 So. 3d at 1088. Recognizing the longstanding principle that criminal statutes ordinarily contain a mens rea component unless clearly excluded, we held that an action violating section 836.10 does not occur unless a defendant "transmitted a communication for the purpose of

5

issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* That holding was central to our reasoning and directly addressed the meaning of the statutory language incorporated into policy 5.1814.

Significantly, *T.R.W.* was decided months before the School Board adopted the version of policy 5.1814 applicable here. Thus, when the School Board chose to define the offense by reference to section 836.10, the School Board did so against the backdrop of an existing judicial construction requiring proof of intent.

Nothing in policy 5.1814 suggests that the School Board intended to reject our construction. Had the School Board intended to do so, it could have expressly said so. The absence of any such language strongly supports the conclusion that the School Board adopted section 836.10 as judicially construed.

### c. The School Board Accepted the Critical Factual Findings

The distinction between findings of fact and conclusions of law is particularly important in this case. The hearing officer found the School Board failed to establish that C.R. had intended to communicate a true threat. That determination rested on numerous subsidiary findings. Among other things, the hearing officer found that C.R. had consistently described the statement as a joke, other students generally perceived the statement as such, the statement was quickly deleted, C.R. expressed remorse, and the evidence did not establish a true intent to threaten.

The School Board did not reject those findings. To the contrary, the superintendent expressly indicated that he did not disagree with the hearing officer's factual determinations. Nor did the School Board find that the findings lacked competent substantial evidence. Accordingly, those findings remained binding. *See* § 120.57(1)(*l*), Fla. Stat. (2024) ("The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.").

Once accepted, those findings substantially narrowed the legal analysis. If section 836.10 requires proof that the communication was transmitted for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat, and if the hearing officer found that the School Board failed to establish that element, then the

incorporated offense was not proven.  The School Board could not avoid that consequence simply by redefining the offense after the fact.

### d. The Board's Reliance on School Board Policy 5.1815 Is Unpersuasive

The School Board alternatively relies on policy 5.1815, which broadly defines a "threat" for threat assessment purposes as follows:

> A threat is a communication of intent to harm someone that may be spoken, written, gestured or expressed in some other form, such as via text messaging, email, or other digital means.  An expression of intent to harm someone is considered a threat regardless of whether it is communicated to the intended target(s) or whether the intended target is aware of the threat.  Threats may be implied by behavior that an observer would reasonably regard as threatening, planning or preparing to commit a violent act.  Not all types of misbehavior that may warrant discipline or even criminal consequences are threats.  It is limited to instances where there is a threat to harm someone else.  If there is doubt, the communication or behavior should be treated as a threat and a threat assessment should be conducted.

Policy 5.1815(3)(a).  The Board contends that this definition should inform policy 5.1814's interpretation.  This argument fails for several reasons.

First, policy 5.1814 expressly identifies section 836.10 as the relevant definition source.  Policy 5.1814 does not reference policy 5.1815.

Second, the two policies serve different functions.  Policy 5.1815 governs threat assessment procedures designed to promote early intervention and school safety.  Policy 5.1814 governs zero-tolerance expulsions carrying serious disciplinary consequences.  If the School Board had wanted policy 5.1815's definition of "threat" to apply to policy 5.1814, the School Board could have referenced policy 5.1815's definition of "threat" in policy 5.1814.  *See L.K. v. Dep't of Juv. Just.*, 917 So. 2d 919, 921 (Fla. 1st DCA 2005) (explaining that when language from one particular section of a statute is excluded from another section of the same statute, the omitted language is presumed to have been excluded intentionally).

Third, the School Board's interpretation would effectively render its express reference to section 836.10 unnecessary.  Courts avoid

constructions that deprive policy language of operative effect. *See Monroe Cnty. v. Jabour*, 389 So. 3d 594, 597 (Fla. 3d DCA 2023). The more natural reading is the one adopted by the hearing officer: policy 5.1814 means what it says and incorporates the offense defined by section 836.10.

### e. The Cases Relied Upon by the School Board Do Not Alter the Analysis

The School Board relies on *Palm Beach County National Utility Co., Inc. v. Palm Beach County Health Department*, 390 So. 2d 115 (Fla. 4th DCA 1980), and *Jaramillo v. City of Homestead*, 322 So. 2d 496 (Fla. 1975), to support its position that section 836.10 was not fully incorporated into policy 5.1814. Neither case supports affirmance.

Both cases address whether a governmental enactment adopts another law by general reference or specific reference and the effect of subsequent amendments, revisions, or repeals. *Palm Beach Cnty Nat'l Util.*, 390 So. 2d at 116; *Jaramillo*, 322 So. 2d at 498. These cases do not stand for the proposition that an agency may adopt a statute by reference while simultaneously disregarding settled judicial interpretations of that statute. In fact, the distinction discussed in those cases concerns future legislative changes.

The present case involves a judicial construction that already existed when the School Board adopted the version of policy 5.1814 at issue. Therefore, neither case undermines the conclusion that policy 5.1814 incorporated section 836.10 as interpreted in *T.R.W.*

### f. Adherence to Policy 5.1814's Text

The School Board emphasizes the seriousness of school violence and the need to respond aggressively to statements suggesting harm. Those concerns are legitimate and substantial. In section 1006.13(1), Florida Statutes (2024), the Florida Legislature directed district school boards to "promote a safe and supportive learning environment in schools by protecting students and staff from conduct that poses a threat to school safety."

School officials must often make difficult decisions under circumstances requiring caution and vigilance. Nothing in this opinion questions those responsibilities. But, at the same time, administrative agencies must operate within the policies they adopt. Courts do not evaluate whether a different policy might be preferable. The judicial task is to determine what the adopted policy means and whether the agency

acted consistently with the policy. *See* § 120.68(7)(d), Fla. Stat. (2024); *Puri v. Dep't of Child. & Fams.*, 371 So. 3d 428, 431 (Fla. 1st DCA 2023) ("The Florida Constitution prohibits this Court from deferring to an agency's conclusions of law."). The School Board's interpretation of policy 5.1814 would permit expulsion even where the incorporated offense under section 836.10 was not established. That interpretation cannot be reconciled with policy 5.1814's language which the School Board adopted.

## IV. Conclusion

To be clear, we have not been asked, nor do we decide, whether the School Board could have imposed discipline under a different provision of its code of conduct. Likewise, we do not decide whether a differently-worded policy would permit expulsion under similar facts. We also do not hold that statements such as the one at issue are harmless or protected from school discipline.

We hold only that under policy 5.1814's specific language, as it existed at the time of the incident, the School Board was required to establish the offense as incorporated from section 836.10. Because the hearing officer found that the required intent was not proven, and because the School Board accepted the underlying factual findings, the School Board lacked a lawful basis to conclude that the charged zero-tolerance offense occurred.

In this case, the School Board elected to define the relevant zero-tolerance offense by reference to section 836.10 within policy 5.1814. Before the Board's adoption of policy 5.1814, we had already interpreted section 836.10 to require proof that a communication was transmitted for the purpose of issuing a threat or with knowledge that it would be viewed as a threat. *See T.R.W.*, 363 So. 3d 1081. The hearing officer found that the School Board failed to establish that element. The School Board accepted the factual findings underlying that determination but rejected its legal consequence.

The School Board's interpretation of policy 5.1814 was erroneous, and a correct interpretation requires that the final order of expulsion be reversed. We remand this case with directions to vacate the expulsion and afford any further relief necessary to remove the expulsion from C.R.'s disciplinary record.

*Reversed and remanded.*

SHEPHERD and LOTT, JJ., concur.

*      *      *

*Not final until disposition of timely-filed motion for rehearing.*